## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| Robert L. Brandewie, | : | Case No. 3:07CV1865 |
| Plaintiff, | : | |
| vs. | : | |
| Commissioner, Social Security Administration, | : | **MEMORANDUM DECISION** |
| | | **AND ORDER** |
| Defendant. | : | |

The parties have consented to have the undersigned Magistrate enter judgment in this case. Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Appeal's Council's final determination denying his claim for disability insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U.S.C. §§ 416 (i) and 423. Pending are issues arising from the briefs of the parties and Plaintiff's Reply (Docket Nos. 13, 18, & 19). For the reasons set forth below, the Commissioner's decision is affirmed.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for Title II DIB on September 20, 2002, alleging that he had been disabled since August 1, 2001 (Tr. 52-54). The application was denied initially and upon

reconsideration (Tr. 33-36, 38-40).  Plaintiff requested an administrative hearing, and on September 27,

2005, Administrative Law Judge (ALJ) Thomas P. Piliero conducted such hearing at which Plaintiff,

represented by Janet Bernard, Vocational Expert (VE) Carl Hartung and Medical Expert (ME) Dr.

Jonathan Nusbaum appeared and testified.  The ALJ issued an unfavorable decision on February 22,

2006 (Tr. 17-25).  On April 24, 2007, the Appeals Council denied Plaintiff's request for review, thereby

rendering the ALJ's decision the Commissioner's final decision (Tr. 4-7).

## JURISDICTION

This Court exercises jurisdiction over the final decision of the Commissioner pursuant to 42

U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).  *McClanahan v. Commissioner of Social Security,* 474 F.3d

830, 832 -833 (6th Cir. 2006).

## FACTUAL BACKGROUND

On September 27, 2005, Plaintiff, a 6'3" male weighing 200 pounds, was 49 years of age (Tr.

275, 278).  He was divorced and lived alone in a home owned by his aunt and uncle (Tr. 275-276).  His

sole source of income was food stamps and public assistance (Tr. 280-281).  Plaintiff smoked a pack

of cigarettes daily and had not taken a drink for nine months (Tr. 278). It had been documented that

Plaintiff consumed up to twelve beers daily.  Plaintiff claimed that he quit "cold turkey" (Tr. 279).

Plaintiff completed the twelfth grade and received post-high school training in air conditioning

(Tr. 277).  He was last employed during the Winter of 2007 for one week.  From 1998 to 2001, Plaintiff

was employed  as a truck driver hauling wide loads.  While employed in this capacity, he suffered

extreme "nervousness" (Tr. 282).  He was employed by an employment agency in 1995 and 1996

building high rise buildings (Tr. 283). His job duties included lifting heavy metal forms, installing guardrails and shooting the grade with a laser (Tr. 284, 285). Previously, Plaintiff had formed concrete, laid pipe and built bridges (Tr. 286). To perform these jobs, he learned how to operate a backhoe and forklift. As an asphalt company employee, Plaintiff operated a dump truck, laid asphalt and razed bridges (Tr. 287).

Plaintiff claimed that he could not work because of anxiety, syncope, pulmonary disease, depression, rear leg pain, arthritis, sociophobia, ulcers and thyroid disease (Tr. 281, 288, 293, 296). He was undergoing counseling apparently to address issues of depression, nervousness and sociophobia (Tr. 289-291). Plaintiff was prescribed asthma medication including an oral inhaler (Tr. 292). He was not undergoing treatment for the pain in his legs and arthritis (Tr. 293). He no longer took medication designed to treat hypothyroidism (Tr. 296). He was not prescribed oxygen (Tr. 297).

In his estimation, Plaintiff claimed that he could not walk "at all" because of the arthritis in his knees (Tr. 297). Plaintiff was tired after climbing stairs (Tr. 300).

During a typical day, Plaintiff arose early and stayed up late. Before lunchtime, Plaintiff drank two pots of coffee, read and watched television (Tr. 298). He cleaned his home, vacuumed, washed dishes and did the laundry (Tr. 299). He was able to drive apparently with no difficulty but he had no hobbies (Tr. 300).

Witness Arthur Bernard testified that Plaintiff was mentally challenged (Tr. 303, 304). He was irresponsible, a chronic complainer and he slept very little. He was unaware of Plaintiff's drinking habits. In Mr. Bernard's opinion, Plaintiff was unique and experienced frequent crises (Tr. 305).

3

The ME testified that the symptoms associated with chronic obstructive pulmonary disease (COPD) were adversely affected by his smoking.  His functional capacity was affected by his COPD (Tr. 308).  Plaintiff could lift twenty pounds occasionally, and ten pounds frequently.  There was no objective evidence to support limitations in his ability to sit, stand or walk.  The evidence would support environmental limitations on increased heights, concentration of fumes, dust, or humidity or working in a temperature controlled environment from 35 to 85 degrees Fahrenheit (Tr. 309).  Plaintiff could climb stairs and ladders occasionally but nothing would preclude Plaintiff from ascending to unprotected heights or hazardous machinery (Tr. 310).

The VE, a certified rehabilitation counselor, classified Plaintiff's past work activity of a construction worker as unskilled work requiring a very heavy level of physical exertion.  The work activity of a truck driver was considered semiskilled work at a medium level of physical exertion (Tr. 312).  Plaintiff had not acquired any transferrable skills from employment as a truck driver or construction worker (Tr. 313).

In West Central Ohio, there were 19,464 stock clerk jobs, 23,835 janitorial jobs and 10,262 food preparation jobs that Plaintiff could perform (Tr. 313-314).  The VE confirmed that his opinion was consistent with the jobs provided in the Dictionary of Occupational Titles (DICOT).

## **MEDICAL EVIDENCE**

### ***2001***

Consumed by psychological stressors, Plaintiff was prescribed a sleep aid on March 22 (Tr. 205).  Plaintiff was treated for right wrist pain on May 2.  However the four views of his wrist showed no

4

bone, joint or soft tissue abnormality (Tr. 142).  Plaintiff left the hospital prior to obtaining instructions for home aftercare (Tr. 141).  On November 21, Plaintiff was diagnosed with COPD of the emphysematous type (Tr. 179).  On November 26, Plaintiff underwent the exploration and repair of a right hernia (Tr. 176-178).

### *2002*

In March, Plaintiff was treated for an allergy to cats, anxiety, abdominal pain, right leg pain and alcohol abuse (Tr. 198, 199, 200).  Plaintiff was treated for abdominal pain on April 30 (Tr. 197).  In May, Plaintiff was prescribed medication for itchy skin, anxiety and COPD (Tr. 196).  On August 6, Plaintiff was treated for depression as evidenced by his lack of energy and persistent sleeping (Tr. 203). On August 26, Plaintiff was treated for pealing skin on his hands and numbness at the tips of his fingers. At that time he was consuming a case of beer daily (Tr. 195).  Once Plaintiff expressed a desire to quit drinking, Dr. Rohrer transferred him to a detoxification center on August 28 (Tr. 145).  Initially, Plaintiff exhibited some serious symptoms or serious impairment in his social, occupational or school functioning (Tr. 152).  At discharge, Plaintiff exhibited only mild symptoms or some difficulty in social, occupational or school functioning.  He was generally functioning pretty well (Tr. 149).

In September, Dr. Michael Wuebker, Ph. D., diagnosed Plaintiff with major depression, dysthymia and alcohol dependency (Tr. 166).  Plaintiff was prescribed a cream to treat skin rash on September 16 (Tr. 193). Plaintiff was treated for a left 2nd toe fracture on September 24 (Tr. 175).  He was advised of the existence of a lung mass and prescribed additional medication to treat symptoms such as pain and depression (Tr. 191).  On September 30, Plaintiff's pain medication was increased to relieve

his pain (Tr. 190).

The result of the chest X-ray administered on October 7 was unremarkable (Tr. 173, 174).  On October 15, Plaintiff was treated for an ear/nose/throat disorder (Tr. 201).

On December 20, Dr. Catherine A. Flynn, Ph. D., diagnosed Plaintiff with affective and substance addiction disorders.  However, his impairments resulted in only mild limitations in activities of daily living, difficulties in social functioning and maintaining concentration, persistence or pace (Tr. 125-135).

**_2003_**

On April 3, Dr. David Rohrer diagnosed Plaintiff with depression, hepatitis, alcohol addiction and COPD (Tr. 168, 170).  On November 15, Dr. Rohrer treated Plaintiff for a cough (Tr. 171).

**_2004_**

On December 16, Plaintiff was treated for gastrointestinal bleeding, reduced delivery of oxygen to his blood and alcoholism dependency (Tr. 256).  The electrocardiogram administered on December 17 was normal (Tr. 246-247).

**_2005_**

On February 18, Dr. Rohrer considered the combined effects of Plaintiff's medical condition and suggested that Plaintiff could only sit/stand for three hours, sit for eight hours, lift/carry up to twenty-five pounds frequently and up to twenty pounds occasionally (Tr. 265).  After a clinical interview conducted on May 17, Dr. Sushil M. Sethi confirmed the diagnosis of severe COPD, anxiety and a history of alcoholism.  Dr. Sethi opined that Plaintiff's ability to do work-related physical activities such

6

as sitting, standing, walking, lifting, carrying and handling objects was moderately limited (Tr. 220). The pulmonary function studies conducted on May 17 at Dr. Sethi's request, resulted in a diagnosis of severe obstructive pulmonary disease (Tr. 222). There was a 40% improvement in lung function when the air flow in the bronchi was increased (Tr. 230).

The range of motion and manual muscle tests conducted by Dr. Sethi showed that Plaintiff's range of motion in the cervical spine, dorsolumbar spine, hips, knees, ankles, shoulders, elbows, wrists, hand and fingers was normal (Tr. 227-228). Plaintiff could also raise his shoulder, elbows, wrists, fingers, hips, knees and feet against maximal resistence (Tr. 226). Dr. Sethi opined that Plaintiff could (1) occasionally lift/carry twenty-five pounds, (2) stand/walk up to six hours, (3) sit without interruption from his impairments for one hour, (4) climb, balance, stoop, crouch and kneel occasionally (5) push/pull on a limited basis, and (6) avoid extreme temperatures, exposure to chemicals, dust, noise, fumes and humidity (Tr. 231-233).

In a letter dated September 7, Dr. Wuebker opined that Plaintiff's ability to attend work, concentrate, remember, keep pace and handle stress in a structured work environment was impaired (Tr. 234-235). Arthur Bernard wrote a similar letter on September 27 in which he explained that Plaintiff, *inter alia*, was withdrawn from society, failed to take responsibility for his acts, failed to correspond with others and was incapable of making rational decisions (Tr. 237).

### *2006*

In May, Dr. Wuebker updated his assessment of Plaintiff's condition, speculating that Plaintiff was moderately impaired with regard to his ability to relate in the work arena because of anxiety and

7

mood issues and that Plaintiff would have no problems following instructions or directions at a job (Tr. 267).

## STANDARD FOR DISABILITY

To establish entitlement to disability benefits, a claimant must prove that he or she is incapable of doing substantial gainful activity due to a medically determinable physical or mental impairment which can be expected to last for a period of twelve months or results in death. *Murphy v. Secretary of Health and Human Services*, 801 F. 2d 182, 185 (6th Cir. 1986) (*citing* 42 U. S. C. § 423(d)(1)(A) (1986)). The claimant must show that his or her impairment results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques derived from acceptable medical sources. 20 C.F.R. §§ 404.1513, 404.1528 (Thomson/West 2007).

To determine disability, the ALJ uses a five-step sequential evaluation process, namely, (1) whether claimant is working; (2) whether claimant has a severe impairment; (3) whether claimant's impairment(s) meets or equals a listed impairment in Appendix1 of Subpart P of Part 404, Listing of Impairments; (4) whether the impairment prevents the claimant form doing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work. 20 C.F.R. § 1520(a)-(f) (Thomson/West 2007).

During the first four steps, the claimant has the burden of proof. *Walters v. Commissioner of Social Security*, 127 F. 3d 525, 529 (6th Cir. 1997) (*citing Young v. Secretary of Health and Human Services*, 925 F.2d 146, 148 (6th Cir. 1990); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Cole*

8

*v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987)).  This burden shifts to the Commissioner only at step five.  *Id.*

Initially, consideration is given to whether the claimant is working or has no impairment or combination of impairments which significantly limit physical or mental abilities.  A finding that the claimant is not disabled will ensue despite medical condition, age, education, and work experience if the claimant is working.  When an impairment meets the durational requirement and meets or equals a listed impairment in Appendix 1, a determination of disabled will issue without consideration of age, education or work experience.  If a decision cannot be made based on current work activity or on medical facts alone, and a severe impairment(s) exists, the ALJ must review the claimant's residual functional capacity (RFC) and the physical and mental demands of past relevant work.  If the claimant can still do this kind of work, the ALJ will find the claimant not disabled.  If the claimant cannot do any past relevant work because of the impairment, further consideration of the claimant's RFC, age, education and past work experience is explored to determine if the claimant can do other work.  If the claimant cannot do other work, the ALJ must find the claimant disabled.

## **ALJ DETERMINATIONS**

After consideration of the entire record, the ALJ made the following findings:

1. Plaintiff met the disability insured status requirements of the Act on August 1, 2001, his alleged disability onset date and he continued to meet the requirements through December 2006.

2. Plaintiff had not engaged in substantial gainful activity since the alleged onset date.

3. Plaintiff had the following impairments that reduced his ability to perform basic work related functions:  COPD, tobacco and substance abuse, depression and anxiety disorders.  However, Plaintiff did not have an impairment or combination of impairments

9

listed in, or medically equal to one listed in 20 C. F. R. Part. 404, Appendix 1, Subpart P.

4.      Plaintiff was capable of performing the basic exertional requirements of light work except that he could not lift more than ten pounds frequently and twenty pounds occasionally, climbing the stairs or ladders occasionally but he must avoid exposure to marked changes in temperature extremes/changes or air pollutants.  Plaintiff should also avoid fast-paced work activity.

5.      Plaintiff was unable to perform past relevant work as a construction worker or truck driver

6.      Plaintiff, a person closely approaching advanced age, with a high-school education and no transferrable work skills to jobs within his residual function capacity for a full range of light work, could perform a significant number of jobs in the regional and national economies.

7.      Plaintiff was not under a disability as defined in the Act at any time through the date of the decision or February 22, 2006.

(Tr. 24-25).

## STANDARD OF REVIEW

Pursuant to 42 U. S. C. § 405(g), this Court has jurisdiction to review the Commissioner's decisions. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).  Judicial review of the Commissioner's decisions is limited to determining whether such decision is supported by substantial evidence and whether the Commissioner employed the proper legal standards. *Id*. (*citing Richardson v. Perales,* 91 S. Ct. 1420, 1427 (1971)).  Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. (*citing Kirk v. Secretary of Health and Human Services*, 667 F. 2d 524, 535, (6th Cir. 1981) *cert. denied*, 103 S. Ct. 2428 (1983)).  The reviewing court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility.  *Id*. (*citing Brainard v. Secretary of Health and Human Services*, 889 F. 2d 679, 681 (6th Cir. 1989); *Garner v.*

10

*Heckler*, 745 F. 2d 383, 387 (6th Cir. 1984)).

In determining the existence of substantial evidence, the reviewing court must examine the administrative record as a whole. *Id.* (*citing Kirk,* 667 F. 2d at 536). If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently. *See Kinsella v. Schweiker*, 708 F. 2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion, *See Mullen v. Bowen*, 800 F. 2d 535, 545 (6th Cir. 1986) (en banc).

## DISCUSSION

Plaintiff claims that this case should be reversed and remanded to the Commissioner for consideration of two errors. First, the ALJ failed to fully and fairly develop the record. Second, the psychological residual functional capacity was not supported by substantial evidence.

Defendant argues that Plaintiff validly waived his right to counsel and that the ALJ fully developed the record. Based on the record as a whole, the ALJ reasonably declined to give controlling weight to the treating physician's opinion.

1.    *Did the ALJ fail to fully and fairly develop the record?*

Plaintiff claims that the ALJ failed to fully and fairly develop the record when he failed to (1) stress the importance of having counsel familiar with the administrative process; (2) obtain two reports from Dr. Wuebker and a chart from Dr. Rohrer's office; and (3) obtain any residual functional capacity opinions.

The mere fact that a claimant is unrepresented by counsel is not grounds for reversal. *Duncan*

*v. Secretary of Health and Human Services,* 801 F.2d 847, 856 (6th Cir. 1986) (*citing Holden v. Califano,*
641 F.2d 405, 408 (6th Cir. 1981)).  When a disability claimant is not represented by counsel at the
administrative hearing, the ALJ has a special duty to ensure that a full and fair administrative record is
developed. *Id.* (*citing Lashley v. Secretary of Health & Human Services,* 708 F.2d 1048, 1051 (6th Cir.
1983).  The burden of providing a complete record, defined as evidence complete and detailed enough
to enable the Commissioner to make a disability determination, rests with the claimant.  *Landsaw v.
Secretary of Health and Human Services*, 803 F. 2d 211, 214 (6th Cir. 1986).

The record in the present case was not adversely affected by the lack of representation.  The ALJ
advised Plaintiff of the importance of having legal counsel that was familiar with the program.  He even
asked Plaintiff if he wanted to obtain counsel or check with Legal Aid (Tr. 273).  Plaintiff replied that
"they" had consulted with counsel (Tr. 272).  Ultimately, Plaintiff explained "I think we got everything
we need" and he agreed to proceed to hearing represented by a layperson (Tr. 273).  It is clear from this
conversation that Plaintiff was aware of his right to counsel and that he waived the right to legal
representation.

Further, there is no evidence that the ALJ failed to conduct a fair trial.  Plaintiff's representative
was given the opportunity to cross-examine/question the ME and the VE (Tr. 310 & 314).  His responses
to several questions did not unfairly taint the ALJ's findings.  The ALJ thoroughly reviewed the
evidence presented in this case, including Plaintiff's testimony, and then discussed Plaintiff's claims,
the medical exhibits and the testimony.  Under these circumstances, the Magistrate cannot find that
Plaintiff was denied a full and fair hearing.

12

Plaintiff suggests that further information could have been brought forth at the time of hearing which would have enhanced the finding of disability. Specifically, the ALJ failed to obtain the complete treatment record from Dr. Wuebker and the office charts/records from Dr. Rohrer's office dated after March 2003.

Dr. Wuebker reported that Plaintiff had only been seen twice at the Foundation Behavioral Health Center. Plaintiff complained that his major depressive episode began sometime within the last several months (Tr. 166). The record contains two reports that were provided by Dr. Wuebker (Tr. 164-166 & 234-236). The ALJ considered both reports in assessing the symptoms of depression (Tr. 19-20).

Even if Dr. Rohrer's office charts/records dated after March 2003 were omitted from the administrative record, the Appeals Council made such charts part of the record for consideration when reviewing the Commissioner's decision (Tr. 8, 243-265). A review of the diagnostic evidence does not mandate a reversal of the ALJ's decision that Plaintiff is not disabled. The final hematology chart was based upon specimen collected on December 15, 2004, and showed evidence of gastrointestinal bleeding (Tr. 243-245). Plaintiff's condition was treated with medication and dietary and lifestyle changes were recommended (Tr. 251). The electrocardiogram administered on December 17, 2004, showed normal sinus rhythm (Tr. 248). Overall, the information derived from the tests performed after March 2003 has minimal value in evaluating the finding of disability.

Finally, Plaintiff claims that in determining physical or mental residual functional capacity, the ALJ failed to obtain an opinion from his treating sources.

Under the administrative rules, the ALJ was not required to obtain a residual functional capacity

13

evaluation from Dr. Rohrer.  However, Plaintiff claims that the Commissioner's residual functional capacity determination was unsupported by substantial evidence because it was not based on an assessment of a treating source.

Residual functional capacity, what an individual can still do despite his or her limitations, is an administrative finding reserved to the Commissioner, not medical sources.  TITLES II AND XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, SOCIAL SECURITY RULING (SSR) 96-8p, 1996 WL 374184 * 2 (July 2, 1996).  Residual functional capacity is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work- related physical and mental activities.  1996 WL 374184 at * 2 (*citing* SSR 96-4p, "TITLES II AND XVI: SYMPTOMS, MEDICALLY DETERMINABLE PHYSICAL AND MENTAL IMPAIRMENTS, AND EXERTIONAL AND NONEXERTIONAL LIMITATIONS.").  The Commissioner can consider residual functional capacity assessments made by state agency medical consultants.  20 C. F. R. § 416.913(c)(Thomson/West 2008).        Plaintiff has failed to present a binding judicial precedent requiring the Commissioner to obtain an assessment of work-related limitations from a treating source. The Magistrate rejects the argument  that a valid residual functional capacity assessment in this case must be supported by Dr. Rohrer's assessment of residual functional capacity.  The ALJ was well within his discretion to reject Dr. Wuebker's opinions in assessing residual functional capacity.

2.      *Was Plaintiff's Psychological Residual Functional Capacity Supported by Substantial Evidence?*

Plaintiff claims that the ALJ failed to include Dr. Wuebker's diagnosis in assessing residual

14

functional capacity.  The ALJ erred in relying on the findings of the state agency psychologists.

The Magistrate finds that the ALJ did consider Dr. Wuebker's opinions but failed to adopt the opinions on its merits.  Dr. Wuebker's diagnoses of severe depression, recurrent, with psychotic features were based on conversations with Plaintiff during clinical interviews (Tr. 164-166 & 234-236).  There is no discernable evidence that Dr. Wuebker established a medically determinable impairment or determined that such impairment caused physical or mental limitations or restrictions that affect Plaintiff's capacity to do work- related physical and mental activities.  Documenting the conversations with Plaintiff about his impairments was not determinative of residual functional capacity.

Finally, Plaintiff does not object to the ALJ's finding that he is precluded from performing fast paced work activity or that he has a moderate limitation in the domain of concentration, persistence and pace.  However, he finds such statements inconsistent with each other.

The terms "concentration, persistence or pace" refer to a claimant's ability to sustain focused attention and concentration sufficiently long enough to permit the timely and appropriate completion of tasks commonly found in work settings.  *Hummel v. Commissioner of Social Security,* 2008 WL 731494, 11 (S. D. Ohio 2008).  Plaintiff had a moderate limitation in the domain of maintaining attention and concentrating.  Accordingly, his impairments produced symptoms that had an impact on his ability to concentrate and maintain attention.  The limitation that Plaintiff avoid fast paced work activity facilitates his ability to maintain attention and concentrate.  The Magistrate finds that these findings are not inconsistent.

## CONCLUSION

15

For the foregoing reasons, the Commissioner's decision is affirmed.

**IT IS SO ORDERED**.


/s/ Vernelis K. Armstrong
United Stats Magistrate Judge


Dated:  June 27, 2008